STATE OF NORTH CAROLINA v. EUGENE THOMAS

No. 7620SC252

(Filed 6 October 1976)

1. Safecracking— opening safe by turning combination dial — conviction under safecracking statute improper

   Defendant's motion for dismissal upon a charge of safecracking under G.S. 14-89.1 should have been granted where the evidence tended to show that defendant unlawfully opened a safe, but there was no evidence that this was done by the use of explosives, drills or tools; rather, the evidence tended to show that the safe was opened simply by turning the dial on the safe combination, thereby releasing the lock and freeing the door handles so that they could be turned and the doors could be pulled open.

2. Safecracking— charge of safecracking — use of explosives, drills, tools required for conviction

   Evidence of the use of explosives, drills or tools is essential to sustain a conviction for violation of G.S. 14-89.1, the safecracking statute.

Chief Judge BROCK concurring part and dissenting in part.

APPEAL by defendant from *Graham, Judge.* Judgments entered 29 October 1975 in Superior Court, ANSON County. Heard in the Court of Appeals 16 June 1976.

In Case No. 75CR4924 the bill of indictment charged that defendant "unlawfully and wilfully did feloniously pick the combination of a safe of Scarborough Hardware Company, a corporation, used for storing chattels, money, and other valuables." In Case No. 75CR4925 the bill of indictment charged that defendant did feloniously steal money, checks, and other personal property of Scarborough Hardware Company, having a value of more than $200.00. The cases were consolidated for trial, and defendant pled not guilty to both charges.

The State presented evidence to show the following: The office of Scarborough Hardware Company, a corporation, is located at the rear of the store and is elevated some seven feet above the floor, being reached by a stairway. In the office there is a large safe used for storing money and valuables. On 23 September 1975 the safe contained, among other valuables, a deposit book containing a $50.00 check, two $30.00 money orders, and $200.00 in cash, consisting of 10 twenty dollar bills. There were also six metal cash boxes in the safe, each of which con-

tained $100.00 petty cash. The safe had two large outer doors which were locked by a combination lock. These could be opened by turning the dial on the combination lock to the proper settings, which then made it possible to turn the door handles and pull the doors open. To open the safe after it was fully locked, it was necessary to turn the dial backwards and forwards to the correct settings for at least three operations. At night, the safe was fully locked. During the day, when it was necessary to go in and out of the safe from time to time, it was not fully locked. Instead, the dial was set in such manner that to open the safe it was only necessary that the dial be turned one-half turn back to zero.

At 2:00 p.m. on 23 September 1975 everything was in order and the safe was locked. At that time the combination lock was set so that the safe could be opened by making the correct one-half turn of the dial. At 2:00 p.m. Mr. Scarborough left the office area and went to the front of the store to wait on customers. After being away from the office for fifteen to twenty minutes, he heard a clicking noise in the vicinity of the nail bin, which was located about twenty feet from the staircase which led up to the office. On investigation, Mr. Scarborough found the defendant in the aisle near the nail bin. Defendant was on his knees astraddle one of the cash boxes and was trying to open it with a tenpenny nail. Defendant fled from the store, but was captured by the police a short time later.

After the police came, it was found that the doors to the safe had been opened, the drawers on the left hand side had been pulled out, and the deposit book which contained the $200.00 was missing. The safe was not damaged in any manner, and no burglary tools were seen around the safe. Mr. Scarborough had never before seen defendant and had not given him permission to enter the safe.

On cross-examination Mr. Scarborough testified that the closest anyone ever saw defendant to the safe "was thirty feet with a box that came out of the safe." He also testified: "I did have suspicions that someone else might have been with the defendant because three months prior five people were in the store with the same type operation, and it dawned on me since he knew how to turn the safe and get it opened, he might have been one of the five involved before. . . . "

The defendant did not present evidence. The jury found him guilty in each case, and from judgments in each case imposing concurrent prison sentences, defendant appealed.

*Attorney General Edmisten by Associate Attorney Cynthia J. Zeliff for the State.*

*H. P. Taylor, Jr. for defendant appellant.*

PARKER, Judge.

[1] In Case No. 75CR4924 defendant was tried and convicted for violation of our "safecracking" statute, G.S. 14-89.1. This statute, originally enacted by Ch. 653 of the 1961 Session Laws and subsequently amended by Ch. 235 of the 1973 Session Laws, is as follows:

> "G.S. 14-89.1. *Safecracking and safe robbery.*—Any person who shall, by the use of explosives, drills, or tools, unlawfully force open or attempt to force open or 'pick' the combination of a safe or vault used for storing money or other valuables, shall, upon conviction thereof, receive a sentence, in the discretion of the trial judge, of not less than two years nor more than 30 years imprisonment in the State penitentiary."

There was evidence in this case that defendant unlawfully opened the safe, but there was no evidence that this was done "by the use of explosives, drills, or tools." On the contrary, the only reasonable inference which may be drawn from the evidence is that the safe was opened simply by turning the dial on the combination "one-half turn back to zero," thereby releasing the lock and freeing the door handles so that they could be turned and the doors could be pulled open. The question presented is whether such evidence was sufficient to support the verdict in Case No. 75CR4924. We hold that it was not and that defendant's motion for dismissal in that case should have been allowed.

Initially, we note that when the statute, G.S. 14-89.1, is considered from the point of view of grammatical construction, the phrase "by the use of explosives, drills, or tools" qualifies all that follows in the sentence. The same is true of the word "unlawfully," as that word appears in the statute. Certainly, it seems clear that the General Assembly intended that the word "unlawfully" modify not only the phrase, "force open or attempt

to force open," but that it also modify the phrase which follows, "or 'pick' the combination of," a safe or vault. When the same normal rules of grammatical construction are applied, it seems equally clear, from the position of the words in the sentence, that the General Assembly intended the phrase, "by the use of explosives, drills, or tools," to apply to both phrases which follow. This interpretation is also supported when customary rules of statutory construction are applied. The offense described in G.S. 14-89.1 is a creature of the statute, and it is a well established rule of statutory construction that "[s]tatutes creating criminal offenses must be strictly construed." *State v. Ross,* 272 N.C. 67, 69, 157 S.E. 2d 712, 713 (1967). Strictly construed, G.S. 14-89.1 makes it a criminal offense to "pick" the combination of a safe or vault *by the use of drills or tools.* Indeed, the very word "pick," standing alone, strongly suggests the use of a tool. Used as a transitive verb with a lock as its object, the word "pick" is defined in Webster's Third New International Dictionary as meaning, "to turn (a lock) *with a wire or a pointed tool* instead of the key esp. with intent to steal." (Emphasis added.) Thus, dictionary definition, as well as application of normal rules of grammatical and statutory construction, leads to the conclusion that the statutory offense created by G.S. 14-89.1 is committed only when the acts proscribed are committed "by the use of explosives, drills, or tools." The very severity of the penalty which was authorized for a conviction of violating the statute, originally life imprisonment and now 30 years imprisonment, strongly suggests that the General Assembly did not intend the statute to apply to one who, though acting unlawfully, somehow acquires knowledge of the combination to a safe and opens it simply by turning the dial.

The State in this case has relied upon the following language which appears in the opinion in *State v. Pinyatello,* 272 N.C. 312, 314, 158 S.E. 2d 596, 597-8 (1968) :

> "Construing G.S. 14-89.1, it is manifest that the statute condemns (1) the felonious opening or attempting to force open a safe or vault used for storing money or other valuables by explosives, drills, or other tools, or (2) to pick feloniously the combination of a safe or vault used for storing money or other valuables. The felonious picking of a combination of a safe or vault is a safe robbery condemned by our statute. The word 'pick' has a distinct meaning well understood by policemen, laymen, and courts alike."

In *State v. Pinyatello, supra,* the indictment charged that the defendant forced open a safe "by the use of an axe and two crowbars and other tools," and the evidence showed that the door to the safe had been torn off and that both the interior and exterior of the safe were totally demolished. The language in the opinion quoted above was directed toward the appellant's contention that the offense created by G.S. 14-89.1 could only occur if the safe opened was one which had a combination. The court rejected that contention and held the statute applicable whether or not the safe involved had a combination. The court was not called upon to decide, and did not hold, that the offense created by the statute could be committed without "the use of explosives, drills, or tools." Moreover, in making the statement that "[t]he word 'pick' has a distinct meaning well understood by policemen, laymen, and courts alike," the court did not intimate that the "well understood" meaning was different from that contained in the dictionary.

[2] G.S. 14-89.1 has been in effect since 1961. During the ensuing years our Supreme Court has had occasion to consider approximately 14 cases, and this Court approximately 10 cases, in which a violation of the statute was involved. We have carefully reviewed all of these cases and have not found one in which conviction was sustained where the evidence failed to show use of "explosives, drills, or tools." We now hold that such evidence is essential to sustain a conviction for violation of G.S. 14-89.1.

As to Case No. 75CR4925, in which defendant was convicted of felonious larceny, we find the evidence ample to sustain the verdict. We have carefully examined all of defendant's assignments of error, and find no error such as to warrant disturbing the judgment entered in that case.

The result is:

In Case 75CR4924 the judgment is vacated.

In Case 75CR4925, no error.

Judge ARNOLD concurs.

Chief Judge BROCK concurring in part and dissenting in part: I concur in the finding of no error in Case 75CR4925 (felonious larceny).

In re Salem

I dissent from the resolution of Case 75CR4924. The majority holding that a conviction of safecracking under G.S. 14-89.1 must be supported by evidence of the use of "explosives, drills, or tools" ascribes to the General Assembly an intent to punish for damage to the safe. In my opinion the General Assembly intended by G.S. 14-89.1 to protect the property which a person has taken the care to store and lock in a safe. The combination dial on a safe is by its nature intended to be turned by hand. Therefore, I do not think the dictionary definition of "pick," as used by the majority, can be applied to the turning of the combination dial on a safe. For this reason I think the General Assembly used the word "pick" in a sense broad enough to cover the unlawful turning of the combination dial on a safe to a position which allows the door to be opened. It is my opinion that evidence of the unlawful "picking" of a combination by turning the combination dial by hand is sufficient, without the use of "explosives, drills, or tools," to support a conviction under G.S. 14-89.1.